The fourth case for this morning is United States v. Rodriguez Mr. Levitt Thank you, and good morning. Ryan Levitt on behalf of Appellant Nicolas Rodriguez. And as this Court certainly knows, there's one issue before it with this appeal. It's whether or not the District Court improperly applied both the trafficking enhancement and the other felony enhancement contained in Guidelines Section 2K2.1, B5, and B6b. And I think it's kind of a technical, complicated question, but in its most simple formulation, the answer turns on whether or not the Sentencing Commission can expressly prohibit simultaneous application of two enhancements through negative implication, through the omission of a critical phase, a phrase. And I submit emphatically that yes, it can. Well, so here's the issue I have. Even taking the Second Circuit's decision into account, and I have nothing but the greatest respect for all of the judges on that panel, but the sentencing guidelines do permit double, quote-unquote, double counting, unless there's an express indication that it's not supposed to happen. So what we've done, for example, with this other felony, is we've said, well, there is an express indication that you don't apply the enhancement if the other felony is a firearms possession or trafficking offense, because that's what the application note says. And that's pretty plain, black and white. What you are arguing for is a rather convoluted, implicit exception, because, of course, the first estate felony of going out and shooting people, which doesn't have anything to do with firearms possession or trafficking, and we would all agree that it's a felony. And so I don't know how you can get to first base on this when it's really not an express prohibition of, quote-unquote, double counting. So in response, I think the first thing we've got to tackle is trying to understand what exactly Application Note 13d is, what it's doing, and what it says. And the district court made a comment that it just reads Application Note 13d purely as a permissive clause. And respectfully, I don't agree with that interpretation. I think it's a limitation, as you just pointed out. There's the parenthetical there that specifically says you can't double count in situations where you... In two defined situations, not including yours, is the thing. I mean, what you've done is you've pulled apart the other part, and you've distinguished between using or possessing a firearm in connection with another felony offense, which you're thinking of as Part 1, or Part 2, possessing or transferring any firearm with the knowledge that it would be the notion that in the second half, if the firearm is transferred, somehow you can't use the other felony enhancement. Right. So I wanted to first just follow up on the parenthetical. I think the limitation that 13d imposes is not just contained to a parenthetical. Had that situation, if that was the sole limitation provided by 13d, it wouldn't be contained in a parenthetical. Parentheticals, by nature, contain asides, clauses, additional materials, ancillary points. We don't put the crux of a limitation... But it's defining. What are we talking about when we say another felony offense? I mean, that's a big universe, and so they're saying, well, we're excluding two things from that universe, i.e. an offense other than firearms possession or trafficking. Right. But what's ultimately missing is that language from the second clause we see in B6b, whether or not the firearm was transferred with knowledge intent or reason to believe the firearm would be used in connection with another felony offense. So I think... But of course, the other thing, the part that we're talking about says, is if the defendant used or transferred. So taking that back into the earlier part, the first part in front of the semicolon is used, and the part after the semicolon is or transferred. So it seems to refer back to the whole thing. I think, and that's the government's principle argument, and the response is to do with transfer. It's an argument based on language, right? Right. But I think the flaw in that argument is the word transfer. What it's doing in that second sentence is it ultimately relates back to the first sentence of the application. Why? Well, because if you go through the first sentence, which of course links, allows B1 and B5 to be double counted. It does so in situations where there's three or more firearms that were both possessed and trafficked. The second sentence, the one we're talking about here, deals with whether or not the defendant used or transferred one of such firearms, dot, dot, dot, and it continues. So by making reference to B1, which relates to the number of firearms used in the offense, and then B5, which is the pure trafficking enhancement, which just states, you know, if the defendant trafficked firearms at four levels, in then bringing B1, B5, and B6 together in the second sentence there, transfer is presupposed. It's already been assumed by application of B5 in tandem with B1. That's why I think the word- But you can violate, I mean, you can get the other felony enhancement if you are using or possessing the firearm yourself in connection with another felony. You don't have to give it to somebody else. But only under, only under the pure in connection with clause. I think if I remember correctly, the reason to believe clause that we've coined that, or excuse me, that goes back to the difference. Yeah, that also has in connection with, that's another point, yeah. But then, and of course, as I said, use in relation to that is just the pure in connection with clause. And then when we step back, of course, that's just one word we're really talking about here, transfer. And we look at what, you know, I would submit just jumps off the page as missing, and that's that knowledge, intent, or reason to believe language. When we look at that, I think that's where, you know, if there's some ambiguity about what the word transfer does in that sentence, I think that's where the rule of lenity comes into play here. And I just submit, I think maybe respectfully, the government missed the point a little bit, but it's one of precision and degree. You know, it's more as there may be kind of slightly an ambiguity, or I don't know, this is a sound conclusion that it's, that there's an express prohibition, but I have some reservations, or there's what I'd call a meta-ambiguity. If there's an ambiguity about whether or not there's an ambiguity, I think that's where the rule of lenity can apply. And that's why this court should find in Mr. Rodriguez's favor. So if there's no other questions, I'll save the rest of my time. Thank you. Mr. Laude? Thank you, and may it please the court. My name is Raj Laude. I represent the United States. The district court here made a clear factual finding that the defendant both trafficked the firearms, and there's no dispute about that, and that he did so with the knowledge, intent, or reason to believe that those firearms would be used in different state law crimes, shooting other people. Slakes, to be exact, right? Right, and I, my understanding is that that's a slang term for the Latin kings, which were apparently a rival street gang of the individuals involved. This situation is, of course, very different than John's, and defense is not suggesting that it's, that John's case with the Seventh Circuit said the other felony offense can't be another trafficking or firearms offense. It is simply a different offense, which is exactly what application note 13D says is permissible. When the other felony offense is something different than just firearms possession or trafficking, the, both enhancements can apply. They're separate harms. It's consistent with the language of the guideline, and I think the district court got it right. It was a straightforward conclusion. If this court has no further questions on this point, I'll just ask that the judgment of the district court be affirmed. I see none, so thank you very much. Thank you. All right, so Mr. Levitt, you get a final couple of minutes, whatever it is. Just have a little bit. I just wanted to point out what the government said about, about the term flakes. That's, if you look at our appendix on page A37, the plea agreement, the reference to Latin kings was actually crossed out, and I think that's important because it relates to whether or not the first clause of B6B could have been the trigger to apply that enhancement. I submit that it does not. The only other comment I had for this court was just to, to, to comment a little further on the harmless error argument that the government raised in its response, and if, if the court does. Judge Conelli does pretty, he doesn't quite say I would have imposed 108 months for all of the reasons. I guess he says I would have imposed the high end of it, but he's just said that the high end would have been 108 months of the lower range. And I, I think the rationale he gives, the, the problem with it and why we can't consider the error harmless if the court does in fact find error, is that he, when he talks about the 3553A factors and he talks about the sentencing enhancements for firearms, the guidelines enhancements for firearms, he's talking about them in a general sense. He's not necessarily, it's not clear if he's talking about B5 and B6B. And what we have at issue here is the base offense level is of course completely related under Chapter 2 to firearms trafficking. B1B applied based on the number which raised the offense level by 4. B4B applied with, based on the existence of obliterated serial numbers, that was another plus 4. And then in addition there was B5, the trafficking enhancement, and B6B, the other felony offense, in connection with enhancement that we're talking about. So it's, if the specific B6B did not apply and it was 4 offense levels lower, resulting in a guidelines range of 2 or 3 years difference I think, if I remember correctly, I'd submit that we can't find, that this court cannot find error harmless. Thank you. Alright, thank you very much. Thanks to both counsel. The case will be taken under advisement. Thank you.